FILED
10/24/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 18, 2018 Session

DESTINE JOHNSON, ET AL. v.
GENERAL MOTORS CORPORATION, ET AL.

Appeal from the Chancery Court for Washington County
No. 35028    John C. Rambo, Chancellor

_____

No. E2017-01642-COA-R3-CV

_____

In this appeal, the plaintiffs alleged that the defendants conspired to prevent new cars sold in Canada from being imported into Tennessee and the rest of the United States in violation of Tennessee's antitrust and consumer protection laws.  The plaintiffs contended that new car prices in Canada are significantly lower than prices for the same cars in the United States and that the effect of the conspiracy was to restrict competition and maintain significantly higher prices.  The trial court approved a settlement agreement and dismissed the case with prejudice against certain defendants.  The plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Gordon Ball, Knoxville, Tennessee and Thomas C. Jessee, Johnson City, Tennessee, for the appellants, Destine Johnson, Helen Jane Kerns, C. Wayne Bartley, and Melonie C. Banks.

K. Erickson Herrin, Johnson City, Tennessee, and Carrie C. Mahan, Washington, D.C., for the appellees, Ford Motor Company, Ford Motor Company of Canada, Ltd., Daimler Chrysler Canada, Inc., and Mercedes-Benz Canada, Inc..

## OPINION

## I. BACKGROUND

In February 2003, various plaintiffs and plaintiffs' counsel filed class action complaints in federal and state courts throughout the United States, including the subject action filed in the Chancery Court for Washington County ("the Chancery Court"). The action in Washington County was filed against eighteen automobile manufacturers and two automobile-dealer trade organizations. The Washington County complaint ("Complaint") was filed by three law firms: Ball & Scott,[1] Jessee & Jessee (two Tennessee firms) and Cohen, Milstein, Hausfeld & Toll ("Cohen Milstein"). Cohen Milstein is a national plaintiffs' firm that also filed complaints in a number of other state courts, teaming with local counsel in those jurisdictions just as they did in Tennessee.

Complaint alleged antitrust claims under Tennessee law and sought to certify a Tennessee-only class of consumers. The basis for these claims, in all of the federal and state complaints, was that the automobile manufacturers and dealer trade associations had conspired to restrict the export of nearly-new Canadian vehicles into the United States.

The federal cases initially alleged a violation of the Sherman Act and sought the certification of a national class of consumers. The federal cases were consolidated through the Multidistrict Litigation ("MDL") process before the Honorable D. Brock Hornby in the United States District Court for the District of Maine. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532. In 2004, following Judge Hornby's dismissal of the federal plaintiffs' damages claims, the federal plaintiffs amended their complaint in the MDL action to assert claims under state laws, including the Tennessee Trade Practices Act and the Tennessee Consumer Protection Act, the same statutes the plaintiffs plead in Complaint. *See* Tenn. Code Ann. § 47-25-101 *et seq.*; Tenn. Code Ann. § 47-18-101 *et seq.*

In June of 2004, the federal court in conjunction with a number of state courts entered a Joint Coordination Order, which established a unified process for pretrial proceedings and discovery. This order designated the federal MDL as the "lead case" and provided that all discovery, including the present action, proceed through the MDL. The Coordination Order provided all signatories, including counsel in the present case, not only with access to all discovery in the federal case but also specifically allowed them to participate in all discovery in the federal case, so as to protect their interest. As a result of the Coordination Order, there was no unique discovery to the case at bar. Lawyers from Cohen Milstein signed the Coordination Order and were active participants in discovery and in all the companion cases. There is no dispute that no attorney from Cohen Milstein ever made a physical appearance on behalf of the plaintiffs in the

---

[1] Ball & Scott is now known as Gordon Ball, PLLC.

Chancery Court. However, Cohen Milstein was never removed from the case.

To prosecute the companion federal and state cases, the plaintiffs' counsel, representing both federal and state plaintiffs, agreed upon and formalized a cooperative representation of the state and federal plaintiffs. In these efforts, a Coordinated Action Counsel committee was formed, with representation from state plaintiffs' counsel, and unified the decision making process by entering into a "confidential joint prosecution agreement." Both state and federal counsel were involved in this agreement.

As the federal litigation moved forward, state plaintiffs' counsel participated in and made appearances and arguments on the record in the federal action. D. Small of Cohen Milstein reported to the federal court the status of state cases, including Tennessee, on June 16, 2004. Cohen Milstein has explicitly stated that they appeared in the federal case on behalf of the state plaintiffs, including Tennessee.

Cohen Milstein worked closely in the negotiations for the settlement agreements with the settling defendants. Cohen Milstein also signed, on behalf of their state plaintiff clients, each of the settlement agreements reached with the settling defendants. When the plaintiffs' counsel sought an award of attorney's fees from the federal court, Cohen Milstein submitted a sworn declaration from one of its lawyers to the court describing its activities on behalf of the state plaintiffs in the federal litigation:

> Drafted and reviewed pleadings and other papers for filing, including complaints, motions, regarding class certification, discovery, summary judgment, and settlement papers; investigated the claims asserted in the coordinated action, including discovery through document requests, interrogatories, and examination by deposition; corresponded with experts; corresponded with coordinated action counsel; engaged in settlement discussions with opposing counsel; reviewed and analyzed briefs filed by the defendants; traveled to and attended status conferences and hearings before the courts.

The plaintiffs in the MDL moved to certify 20 state damage classes, including a class of Tennessee consumers. The court granted this certification, but on March 28, 2008, the First Circuit vacated the district court's decision. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F. 3d 6, 8-9, 29 (1st Cir. 2008). The First Circuit held that the theory was deficient, speculative and could not establish the impact. *Id.* at 28-29.

While this was occurring, the defendants moved for summary judgment in the MDL action. The consolidated plaintiffs' group filed a joint opposition to the motion.

Cohen Milstein signed on to the brief in opposition on behalf of the various state plaintiffs.

On July 2, 2009, the federal court granted summary judgment and entered judgment on the claims of all remaining federal plaintiffs, which were brought under the laws of 19 different states, including Tennessee. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 632 F. Supp. 2d 42, 51 n. 13, 62-63 (D. Me. 2009). The district court held that the federal plaintiffs could not prove harm from their claims. *Id.* at 58-59, 63. The court examined the law of all 19 states and determined that each state – including Tennessee -- requires evidence of injury, and this was not proven. *Id.* The federal court entered judgment in favor of the defendants on August 24, 2009.

All the while, this case was pending in the Chancery Court. On September 8, 2005, the Chancery Court entered an order deferring further action in the case until Judge Hornby ruled on the certification issues. Several defendants were voluntarily dismissed from this action: BMW of North America; BMW Canada, Inc.; DaimlerChrysler AG; NADA; Nissan North America, Inc.; American Honda Motor Co., Inc.; Honda Canada Inc.; CADA; Toyota Motor Corporation; Toyota Motor Sales, U.S.A., Inc.; and Toyota Canada, Inc.

Following the federal summary judgment decision and the active participation of the state action plaintiffs in the joint prosecution of the federal action, the Ford Motor Company defendants ("Ford") moved on behalf of certain defendants for judgment in the Minnesota companion case. The Minnesota court ruled that the federal judgment bound the Minnesota plaintiffs and entered judgment for all the defendants. *See Lerfald v. Gen. Motors Corp.*, No. 27-CV-03-3327 (Minn. Dist. Ct. Hennepin Cnty. Sept. 17, 2010). Applying the doctrine of claim preclusion, the court explained that the states are bound by the federal judgment even though they were not formally parties. *Id.* The court set forth the manner in which plaintiffs, through counsel, actively participated in the joint prosecution of the federal action, and determined that because plaintiffs "were adequately represented . . . in the federal litigation upon the same subject matter, res judicata principles bar plaintiffs from reasserting their claims before state . . . court."

Following their success in the Minnesota court, Ford filed a similar motion in the Arizona companion case. Arizona likewise held that res judicata bars the claim because the plaintiffs were adequately represented in the MDL action. *See Maxwell v. Gen. Motors Corp.*, No. CV 2003-003925 (Ariz. Super. Ct. Maricopa Cnty. Mar. 1, 2011). The court found that both sets of plaintiffs made the same claims under the same theories. Further, the court noted, "it is difficult to imagine a more compelling case for preclusion based on adequate representation." A very similar motion has also been successful in New Mexico and Wisconsin. *See Corso v. Gen. Motors Corp.*, No. D-1010-CV-2003-00668 (N.M. 1st Jud. Dist. Ct. Jan. 19, 2018); *Rasmussen v. Gen. Motors Corp.*, No. 03-CV-001828 (Wisc. Cir. Ct. Mar. 19, 2018).

- 4 -

In the midst of these successful motions, the Chancery Court of Washington County was faced with considering a similar res judicata motion. The Chancery Court rejected the plaintiffs' arguments and held:

> Plaintiffs here were in privity with the plaintiffs in the federal action because the same Tennessee statutes were at issue in both cases and the interests of both sets of plaintiffs were aligned; the federal plaintiffs understood themselves to be acting in a representative capacity and the federal court took care to protect the interests of the non-party state plaintiffs, including the Tennessee state plaintiffs; and notice of the federal action was clearly provided to the Plaintiffs here. For these reasons, the Plaintiffs here were adequately represented in the federal action.

The Chancery Court further held that privity existed due to the representation by Cohen Milstein,

> who actively participated in the federal action on behalf of the state plaintiffs, including the Tennessee state plaintiffs, by entering into a confidential Joint Prosecution Agreement between the state and federal plaintiffs' attorneys, which was designed to protect the interests of all plaintiffs, state and federal; by being part of the Coordinated Action Counsel Committee, which was also created to represent and protect the interests of all plaintiffs, state and federal; by participating in strategic decisions regarding the claims, theories, discovery, and hiring of experts; by appearing in the federal action on behalf of these Plaintiffs; and by signing on to the opposition to the summary judgment motion that ended the federal action.

Based on the Chancery Court's finding that Ford was entitled to judgment, the court held that the reasoning of the judgment applied equally to all remaining defendants in the action, and thus entered judgment in favor of FCA Canada, Inc. f/k/a DaimlerChrysler of Canada, Inc., and Mercedes Benz Canada, Inc. ("Chrysler Defendants"), the only other remaining defendants. In granting Ford's res judicata motion, the Chancery Court explicitly considered and rejected that Cohen Milstein did not represent the plaintiffs. The court noted that Cohen Milstein had been one of the firms filing the complaint that initiated the case and that they were never withdrawn. The court reviewed the facts showing Cohen Milstein's involvement in the federal action on behalf of state plaintiffs and concluded that there was no dispute as to whether adequate

representation is present.

The plaintiffs filed a timely appeal in this case after the Chancery Court ruled on the res judicata motion.

## II. ISSUES

A.      Whether the Chancery Court correctly granted the res judicata motion below and entered judgment for the appellees based upon a 2009 ruling and subsequent entry of a judgment in the companion federal action, thus providing the due process protections required for the application of res judicata.

B.      Whether the Chancery Court was correct when it entered judgment for all remaining defendants against whom identical claims were asserted because res judicata precludes the appellants from asserting those claims in their entirety.

## III. STANDARD OF REVIEW

A trial court's decision that a lawsuit is barred by principles of res judicata presents a question of law reviewed de novo by this court. *In re Estate of Boote*, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005). The Chancery Court's decision carries no presumption of correctness. *In re Estate of Goza*, 397 S.W.3d 564, 566 (Tenn. Ct. App. 2012).

## IV. DISCUSSION

The Chancery Court held that the appellants, who advanced the same Tennessee antitrust and consumer protection claims as the federal Tennessee plaintiffs, based on the same evidence and theory of harm, are bound by that earlier judgment. Under accepted principles, "res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989) (*quoting Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987)).

## A.

The appellants, who advance the same theories and arguments based on the same facts as the federal plaintiffs, had a full and fair opportunity to litigate the matter in the MDL action. This action is almost a copy of the federal action, arising out of identical

factual circumstances. Judge Hornby's decision in the federal action constitutes a final decision on the merits of those claims, and therefore, this action is barred. Five other state courts have ruled on this same issue of whether the plaintiffs in the companion state actions are bound by the federal summary judgment decision.[2] The findings of these states support the Chancery Court's ruling. Based on the relevant principles of law, prior case law and the facts of the present case, we find that the Chancery Court's decision must be affirmed.

In *Taylor v. Sturgell*, the United States Supreme Court recognized several exceptions to the rule against nonparty preclusion. 553 U.S. 880, 894-895 (2008). Of these exceptions, two apply to the case at hand: where plaintiffs (1) were "adequately represented" in a prior litigation or (2) exercised control over that prior litigation. *Id.* The evidence supports the Chancery Court's determination that both of these exceptions are easily satisfied. It is commonly accepted in Tennessee that "different parties are in privity if they stand in the same relationship to the subject matter of the litigation." *Trinity Indus., Inc. v. McKinnon Bridge Co.,* 77 S.W.3d 159, 185 (Tenn. Ct. App. 2001). There can be no dispute that both the federal plaintiffs, as well as the plaintiffs in this case, stood in the same relationship to the subject matter of the litigation in their respective courts.

## 1.

In *Taylor*, the Court made clear that representation of a nonparty is "adequate" for preclusion purposes if: (1) the interest of the nonparty and its representative are aligned; (2) either the party understood itself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty; and (3) notice of the original suit has been given to the persons alleged to have been represented. *Taylor*, 553 U.S. at 900 (*citing Richards v. Jefferson Cnty.*, 517 U.S. 793, 801-802 (1996); *Hansberry v. Lee*, 311 U.S. 32, 43 (1940)).

The Chancery Court held that there was no dispute as to the presence of adequate representation. The first element is the alignment of the interest of the nonparty and its representative. This element is clearly satisfied. The parallel proceedings between federal and Tennessee plaintiffs were identical. They contained the same subject matter, claims, and evidence. The Chancery Court noted that: "[t]he subject matter[,] claims, the record, it's all the same." This led the Chancery Court to conclude: "the federal and Tennessee plaintiffs had identical interests because the actions, the parallel actions were identical." We agree with the trial court on this finding. It is perfectly reasonable to

---

[2] Minnesota, Arizona, New Mexico, and Wisconsin granted motions essentially identical to the motion before the Chancery Court and entered judgment for all defendants on all claims. The California court also found that res judicata barred plaintiffs' claims in the parallel California case, based upon that state's "primary rights doctrine."

- 7 -

believe that two separate parties suing for exact claims on the exact same theory would have an exact same interest in the action.

The next element that must be proven to establish "adequate representation" is the party acting in a representative capacity. Counsel for the plaintiffs' actions in the federal case could be described as a highly active role. Cohen Milstein vigorously participated in litigating the federal case from the start. There was a written joint prosecution agreement that was, according to counsel's sworn declaration, "intended to protect the interests of all plaintiffs." Further, plaintiffs concede this element in their brief by stating that "[a]s State Action Counsel . . . Cohen Milstein was actively involved in the representation of state plaintiffs in other state courts and in the coordinated federal actions."

The national collaboration of counsel, giving the states a voice in the federal suit, exemplifies that the federal plaintiffs knew they were acting as representatives to the states. Coordinating plaintiffs' counsel is on the record informing the federal court that they had "reached a confidential agreement providing for coordinated prosecution of all the actions." This protection and representation results from those attorneys in the federal suit acting as counsel for the state plaintiffs.

Counsel for the plaintiffs represented them in federal court, in the negotiation of the joint prosecution agreement, in the committee that participated in controlling all of the litigation against the defendants, in the development of the legal and expert theory of the case, in the negotiation of settlements, and finally in the unsuccessful opposition to the defendants' motion for summary judgment. Therefore, we find that the appellants in this case are bound by the decision on that motion. Accordingly, we agree with the trial court on this finding. Based on the record presented, we agree that the party acted in a representative capacity.

Further the Chancery Court held that even if there was no action in a representative capacity, the second element was met based on the court taking care to protect the interest of the nonparty. As stated in the Joint Coordination Order, the federal court understood itself to be responsible for conducting "the lead case." The joint discovery plan provided for state plaintiffs' protection in all phases of discovery, and the federal court permitted state plaintiffs' counsel to participate to protect their interests in the federal forum. Further, Judge Hornby sent updates to the state court judges to keep them advised on the developments in the federal case. All of this information led the Chancery Court to hold that, "the federal court took care to protect the interests of the nonparty state plaintiffs, including the Tennessee state plaintiffs." Accordingly, we agree with the Chancery Court that the federal court carefully protected the interests of the present plaintiffs.

The final factor that is required to satisfy "adequate representation" is that notice of the original suit has been given to the persons alleged to have been represented.

*Taylor* states that notice is not always required.  553 U.S. at 901 n.11.  However, in the present case, it is undisputed that the appellants here had such notice.

Based on the satisfaction of these three elements, we hold that the plaintiffs were "adequately represented" in the federal action.  Therefore, an exception to the rule against nonparty preclusion is present.  We agree with the trial court that res judicata bars this claim.

**2.**

The plaintiffs are also bound by the outcome of the federal proceeding on the independent ground that they were part of the group of plaintiffs that "'assumed control' over the litigation in which that judgment was rendered."  *Taylor*, 553 U.S. at 895.  Tennessee courts have described this standard as:

> [W]henever one has an interest in the prosecution or defense of an action, and he, in the advancement or protection of such interest, openly takes substantial control of such prosecution or defense, the judgment . . . is conclusive for and against him to the same extent as if he were . . . the real party to the action.

*Tenn. Eastman Co. v. Adams*, 381 S.W.2d 269, 272 (Tenn. 1964).

The plaintiffs here exercised such control as part of the group of plaintiffs whose attorneys collaboratively made strategic and procedural decisions pursuant to their joint prosecution agreement.  The Chancery Court explained that the plaintiffs:

> [e]xercised control over the federal litigation through their counsel Cohen Milstein, who actively participated in the federal action on behalf of the state plaintiffs, including the Tennessee state plaintiffs, by entering into a confidential Joint Prosecution Agreement between the state and federal plaintiffs' attorneys, which was designed to protect the interests of all plaintiffs, state and federal; by participating in strategic decisions regarding the claims, theories, discovery, and hiring of experts; by appearing in the federal action on behalf of these Plaintiffs; and by signing on to the opposition to the summary judgment motion that ended the federal action.

Throughout the federal litigation, counsel for the state plaintiffs reiterated that the strategic decisions were the result of coordination between the parties intended to protect

the interest of all plaintiffs – state and federal. This is exemplified by the state plaintiffs' joinder, through counsel, in the very summary judgment filings that led to the issuance of the federal court judgment.

Either adequate protection of the plaintiffs' interest, or their exercise of control over the federal litigation, is sufficient by itself to establish privity between the Tennessee plaintiffs and the federal plaintiffs, making the federal judgment binding upon the Tennessee plaintiffs. Both factors are clearly present in this case, as found by the Chancery Court. We agree that the Chancery Court correctly granted Ford's res judicata motion and entered judgment for the defendant based upon a 2009 ruling and subsequent entry of a judgment in the companion federal action, thus providing the due process protections required for the application of res judicata.

**B.**

The Chancery Court entered judgment in favor of all the defendants remaining in this case. The plaintiffs contend that the trial court erred in granting judgment based on res judicata to all remaining defendants. We must agree that the Chancery Court acted properly when it entered judgment for all remaining defendants against whom identical claims were asserted because res judicata precludes the appellants from asserting those claims in their entirety.

Res judicata is a claim preclusion doctrine that bars the re-litigation of entire claims – not individual defendants. *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000) (citations omitted); *Brown v. Shappley*, 290 S.W.3d 197, 201 (Tenn. Ct. App. 2008). In Tennessee, a trial judge can dismiss an action sua sponte, whether one, all, or no defendants moved the court, based on res judicata. *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 791 (Tenn. Ct. App. 2007). Further, the Tennessee Supreme Court has construed Rule 41.02 of the Tennessee Rules of Civil Procedure to "authorize a trial judge, sua sponte, to dismiss an action upon adequate grounds." *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 31 (Tenn. 1978) (citations omitted).

The application of this law to the present case is pretty straightforward. Res judicata bars the entire claim – not just individual defendants. Further, the judge can dismiss an action sua sponte pursuant to res judicata. As previously explained, the plaintiffs' claims are barred due to res judicata. Therefore, the trial court properly dismissed all remaining defendants from the action.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Cost of the appeal are taxed to the appellants, Destine Johnson, Helen Jane Kerns, C. Wayne Bartley, and Melonie C. Banks.

_____
JOHN W. MCCLARTY, JUDGE